[Cite as *In re A.E.*, 2016-Ohio-438.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re A.E., K.T.

Court of Appeals No. L-15-1146

Trial Court No. JC 15246214

**<u>DECISION AND JUDGMENT</u>**

Decided: February 5, 2016

* * * * *

Shelby Cully, for appellee.

Stephen D. Long, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which adjudicated the minor child A.E. dependent and neglected, and the minor child K.T. abused, and awarded permanent custody of A.E. to appellee Lucas County Children Services ("LCCS"), thereby terminating mother-appellant's, M.D., parental rights. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} Appellant is the mother of A.E., who was three years old at the time of the hearing, and K.T., who was three months old when he passed away. Appellant lived with the father of K.T.[1] The father of A.E. is unknown.

{¶ 3} On March 3, 2015, LCCS filed a complaint in dependency, abuse, and neglect, in which it requested that the trial court award it permanent custody of A.E. A prior case had been filed on December 3, 2014, but was dismissed at the March 3, 2015 shelter care hearing. Appellant was present at the March 3, 2015 hearing with the same counsel that had been appointed on the prior case.

{¶ 4} Thereafter, a pretrial was held on April 22, 2015, at which appellant failed to appear. Appointed counsel informed the court that she had spoken with appellant prior to the hearing, and understood that appellant was going to attempt to be at the hearing but was having transportation issues.

{¶ 5} On May 12, 2015, the adjudication and disposition hearing was held. Again, appellant failed to appear. Counsel indicated that she had no information regarding appellant's whereabouts, and that the last time she had spoken to her directly was in a phone call on March 10, 2015. She stated that since March 10, 2015, appellant has left her two phone messages from an out-of-state number, but when she returned the call, it went to a generic message system and gave no further information. It was later revealed

---

[1] K.T.'s father did not appeal the trial court's adjudication and is not a party to this appeal.

during the disposition portion of the trial that appellant left for California a few days prior to the April 22, 2015 pretrial. Counsel then requested to withdraw as she has had no direction from her client and has not been able to review discovery with her to prepare for trial. The trial court granted counsel's request, finding that appellant's actions indicated that she was waiving her right to counsel. The adjudication then commenced with the father of K.T. present.

{¶ 6} The testimony from the trial revealed that LCCS became involved on November 20, 2014, when it was notified that K.T. had been taken to the hospital with signs of shaken baby syndrome. K.T.'s heart had stopped, but medical staff was able to restore a heartbeat. However, testing revealed that K.T. no longer had any brain activity. K.T. was taken off of life support on November 21, 2014, and passed away. Dr. Randall Schlievert, an expert in child abuse pediatrics, testified that the injuries sustained by K.T. as indicated in the autopsy report and medical records conclusively revealed that he was subject to abusive head trauma. Dr. Schlievert testified that this conclusion was consistent with initial statements made by K.T.'s father that he had thrown the child hard into a car seat. K.T.'s father subsequently stated that he was carrying K.T. and fell down some stairs when the injury occurred. Dr. Schlievert testified that the latter explanation would not have caused the injuries that were sustained.

{¶ 7} A.E. was removed from the home and placed with K.T.'s paternal grandfather on November 21, 2014. Erica Saldana, an assessment caseworker with LCCS, testified that she conducted an investigation to substantiate the allegations of child

3.

abuse. As part of her investigation, she learned that appellant had a history of mental illness and poor parenting skills. Appellant reported that she had been diagnosed with bipolar disorder and depression. Saldana also discovered that appellant had permanently lost custody of a prior child in Nevada due to her mental health, substance abuse, and parenting concerns. The records from that termination proceeding were entered into evidence.

{¶ 8} Shawn Myers, an ongoing caseworker at LCCS, testified next. Myers testified that the initial plan was that A.E. would reside with K.T.'s paternal grandfather and that appellant would have supervised visitation. A few weeks later, however, on December 17, 2014, A.E. was removed from the home when K.T.'s paternal grandfather stated that he could no longer take care of the child. He reported that appellant was present from morning to night and was overstaying her welcome. In addition, there was a specific incident where appellant threatened the grandfather over the grandfather's plan to cut A.E.'s hair. Appellant denied specific threats, but divulged to Myers that she was a fighter and had stabbed a few people in the past. When LCCS received A.E. on December 17, 2014, A.E. was dirty, and had an odor about him. He was wearing shoes that were very tight. A.E. also had a severe infestation of head lice and scabies.

{¶ 9} Following the testimony and submission of exhibits, the trial court took a short recess after which it found by clear and convincing evidence that A.E. was a dependent and neglected child, and K.T. was an abused child. The matter then proceeded

immediately to disposition. The trial court noted that it lost jurisdiction over K.T. for purposes of disposition because K.T. was deceased.

{¶ 10} During the disposition portion of the hearing, Myers again testified. Myers expressed several concerns, including that mother left for California without informing LCCS. Myers spoke with appellant after the pretrial, and was told that appellant was staying with her sister in California and was going to get a job and get her life together, and that she would be back to fight for A.E. at the next court date. Notably, Myers testified that LCCS could not offer case plan services in California.

{¶ 11} Myers also expounded on the circumstances involving the termination of parental rights regarding the prior child in Nevada. Myers explained that appellant left the nine-month-old child with a mentally disabled woman for nearly two weeks. The child's clothes were moldy, and he had mold growing in the crease of his neck, and his penis was infected badly. Appellant, who was homeless at the time, left the child with no supplies, except for half of a box of rice cereal and a box of chocolate doughnuts. Myers further revealed that appellant had a fourth child, who she gave to a relative when the child was six weeks old. Appellant has not seen that child in over three years.

{¶ 12} Myers testified that in the beginning, he recommended that appellant do a mental, drug, and alcohol assessment and take some parenting classes. Myers recommended the mental health assessment in part because appellant expressed that she wanted counseling and needed help. However, during the assessment, appellant indicated that she did not need or want any mental health services. Myers testified that appellant

5.

reported that in previous encounters with children's services agencies, mental health services would be recommended, but she would quit them as soon as the case was closed.

{¶ 13} Myers stated that as he gathered more information, the goal changed from reunification to seeking permanent custody. Myers specifically referenced appellant's history with child protection services and law enforcement in other states, and that similar behaviors were now being revealed in Ohio. Further, Meyers expressed concern with the nature and content of appellant's continued contact with K.T.'s father. Myers testified that appellant lied about not contacting K.T.'s father, as evidenced by recorded phone calls from the jail showing that they had spoken approximately 60 times between November 20, 2014, and February 3, 2015. Some of the recordings were played into evidence, and revealed strong statements of adoration and affection for one another, and promises that appellant would always be there for K.T.'s father. Myers offered that appellant's devotion to K.T.'s father casts significant doubt on her ability and capacity to protect A.E.

{¶ 14} Myers additionally testified that since being removed from the home, A.E. is doing much better. He is happy and interactive, and his speech ability is improving. Lastly, Myers testified that he believed permanent custody is in the best interest of A.E. given appellant's unstable housing, her lack of judgment, and her mental health.

{¶ 15} Finally, the guardian ad litem testified. She recommended permanent custody to LCCS because mother is incapable of parenting as evidenced by her relationship with K.T.'s father, her history with her prior children, and the fact that A.E.

6.

was covered with lice and scabies when he came into LCCS' care. She further remarked that A.E. is doing well in his placement, has shown significant improvement, and is bonded to the foster parents.

{¶ 16} Upon hearing the testimony and receiving the exhibits, the trial court found by clear and convincing evidence that despite reasonable efforts to prevent A.E.'s continued removal from the home, A.E. could not and should not be returned to the parents. Specifically, the trial court referenced R.C. 2151.414(E)(1), (2), (4), and (11). The court also found by clear and convincing evidence that an award of permanent custody to LCCS was in the child's best interest. On May 19, 2015, the trial court entered a judgment memorializing its findings.

{¶ 17} Appellant has filed a pro se appeal from the trial court's May 19, 2015 judgment. On July 16, 2015, we sua sponte found appellant to be indigent and appointed counsel.

{¶ 18} Subsequently, appointed counsel for appellant has filed a brief and requested leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Under *Anders*, if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw. *Id.* at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* Counsel must also furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise additional matters. *Id.* Once these

7.

requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if state law so requires. *Id.*

## II. Assignments of Error

{¶ 19} In his *Anders* brief, counsel has assigned the following potential errors for our review:

1. The trial court erred in granting appellee Lucas County Children Services Board's motion for permanent custody as the decision was against the manifest weight of the evidence.

2. Appellant was denied effective assistance of counsel.

3. The Lucas County Children Services Board was barred by the doctrine of *Res Judicata* from relitigating the adjudication of the children where the issue had been addressed in the prior action, which the agency dismissed.

4. The trial court erred in finding it retained jurisdiction to adjudicate a deceased child as an "abused child" pursuant to Ohio Revised Code 2151.031(C).

{¶ 20} Appellant has not filed a pro se brief or otherwise raised any additional matters.

8.

### III. Analysis

### A. Manifest Weight

{¶ 21} In the first potential assignment of error, counsel suggests that the trial court's findings at disposition were against the manifest weight of the evidence.

{¶ 22} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(d) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

{¶ 23} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going

9.

to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 24} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child,

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent if any of sixteen factors are met. Although the trial court found that R.C. 2151.414(E)(1), (2), (4), and (11) applied, we need only discuss R.C. 2151.414(E)(11), which provides:

> (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing

10.

evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 25} In reaching its decision, the trial court recognized that appellant previously had her parental rights terminated in Nevada amid concerns regarding her mental health and stability. It found that those concerns remain. Supporting the court's findings are the testimony that appellant has been diagnosed with bipolar disorder and depression, the fact that she does not seek treatment for those issues, appellant's inability to maintain stable housing as evidence by her recent move back to California, and appellant's continued relationship with the father of K.T. while he is awaiting trial for K.T.'s alleged murder. Notably, the record contains no evidence that appellant can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of A.E. Thus, we hold that the trial court's finding that R.C. 2151.414(E)(11) applies is not against the manifest weight of the evidence.

{¶ 26} In addition to finding that A.E. could not be placed with appellant within a reasonable time, or should not be placed with appellant, the trial court found that granting permanent custody of A.E. to LCCS was in the child's best interest. Supporting this finding was the testimony of the ongoing caseworker and the guardian ad litem indicating that A.E. was happy, was well-bonded with his foster caregivers, and was showing great

11.

progress since being removed from the home. Therefore, we hold that this finding is also not against the manifest weight of the evidence.

{¶ 27} Accordingly, counsel's first potential assignment of error is not well-taken.

### B. Ineffective Assistance of Counsel

{¶ 28} In his second potential assignment of error, counsel offers that appellant received ineffective assistance of trial counsel.

{¶ 29} Here, appointed counsel was permitted to withdraw before the adjudication began, which raises a preliminary issue that we will now discuss, namely whether the trial court violated appellant's due process rights when it conducted the proceedings in appellant's absence and without her being represented by an attorney.

{¶ 30} "Ohio courts are * * * unanimous that great care must be taken to ensure that due process is used in parental-termination proceedings." *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.), citing *In re Trevor W.*, 6th Dist. Lucas No. L-01-1371, 2001 WL 1518066, * 3 (Nov. 30, 2001). "However, Ohio courts have also recognized that a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *In re Trevor W.* at * 3.

{¶ 31} We find *In re Trevor W.* to be instructive. In that case, the attorney for the mother moved to withdraw from representation at the beginning of the adjudicatory hearing. The attorney stated that she had sent several letters trying to make contact with

12.

the mother but had no response. In addition, a caseworker had given the mother the attorney's name and telephone number two weeks before the hearing, but the mother never made contact. The attorney stated that as a result, she could not represent the mother because she had no idea of what her client's intentions were. The trial court granted the motion to withdraw, and we affirmed on appeal, concluding that the mother did not cooperate or communicate with the trial court or with her counsel. *Id.*

{¶ 32} Similarly, here, trial counsel had not had any contact with appellant for the two months prior to the adjudication, despite several attempts to contact her. We acknowledge that appellant did leave two voice messages with trial counsel, and indicated that she planned to attend the pretrial but was having issues with transportation. We also acknowledge that in *In re Trevor W.*, we noted, "In cases where the parent has communicated with the trial court or with counsel to explain a problem with attending the scheduled hearing date, Ohio courts have recognized that the failure of a trial court to take extra care to ensure the parent could be present is an abuse of discretion." *Id.* However, appellant's contact prior to the pretrial does not overcome the fact that several days before the pretrial began she voluntarily moved to California without notifying her attorney or the court, and had no further contact with counsel for the three weeks after the pretrial. Therefore, we hold that the trial court did not abuse its discretion or violate appellant's due process rights when it proceeded with the adjudication despite appellant's absence because appellant failed to communicate or cooperate with the court or counsel.

13.

{¶ 33} Turning to the issue of ineffective assistance, we note that the two-part test for ineffective assistance of counsel in a parental rights termination proceeding is the same as that used in criminal cases. *Jones v. Lucas County Children Servs. Bd.*, 46 Ohio App.3d 85, 86, 546 N.E.2d 471 (6th Dist.1988). That is, appellant must show counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 34} In this case, we find that the request for withdrawal under the circumstances was not an act that fell below an objective standard of reasonable representation. Without any communication with her client, trial counsel was in a position where she was unable to represent her client's interests because she had no way to determine what her client's interests were. Therefore, we hold that the first prong of the *Strickland* test has not been met. *See In re Trevor W.*, 6th Dist. Lucas No. L-01-1371, 2001 WL 1518066, at * 4.

{¶ 35} Accordingly, counsel's second potential assignment of error is not well-taken.

## C. Res Judicata

{¶ 36} In his third potential assignment of error, counsel suggests that LCCS was barred from relitigating the adjudication where the issue had been addressed in the prior action.

14.

**{¶ 37}** The issue preclusion concept of res judicata "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). Here, however, we find that res judicata does not apply because, as appellate counsel notes, the prior action was dismissed without the trial court taking any action after the December 3, 2014 shelter care hearing and granting a continuance on February 11, 2015. Although the trial court mentioned at the March 3, 2015 shelter care hearing that the previous case was pending for disposition, thereby suggesting that the children had already been adjudicated abused, dependent, or neglected, it is evident from the record of the proceedings that no such adjudication had been made. Thus, the issues of adjudication had not been actually and necessarily litigated and determined.

**{¶ 38}** Accordingly, counsel's third potential assignment of error is not well-taken.

### D. Jurisdiction over K.T.

**{¶ 39}** In the final potential assignment of error, counsel proposes that the trial court erred when it retained jurisdiction to adjudicate K.T. as an abused child despite the fact that he was deceased.

**{¶ 40}** R.C. 2151.23(A)(1) provides that the juvenile court has exclusive original jurisdiction "[c]oncerning any child who on or about the date specified in the complaint * * * is alleged * * * to be a * * * abused, neglected, or dependent child." R.C. 2151.031 defines "abused child" as "any child who:  * * * (C) Exhibits evidence of any physical or

15.

mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it."

{¶ 41} Upon review of the statutes, we conclude that the trial court did not err when it found that it had jurisdiction to adjudicate K.T. as an abused child. R.C. 2151.23(A)(1) references the relevant time frame for the purpose of determining jurisdiction over a child as the date specified in the complaint, not the date of the adjudication hearing. Further, R.C. 2151.031 includes a child who has suffered death through non-accidental means in its definition of "abused child." Such language would be superfluous if a juvenile court could not exercise jurisdiction over a child who has died. Therefore, we hold that the trial court retains jurisdiction over a deceased child for the purpose of adjudicating him or her as an abused child.

{¶ 42} Accordingly, counsel's fourth potential assignment of error is not well-taken.

## IV. Conclusion

{¶ 43} We have conducted an independent review of the record, as required by *Anders*, and find no issue of arguable merit for appeal. Therefore, counsel's motion to withdraw is hereby granted.

**{¶ 44}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Stephen A. Yarbrough, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.